UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| CHARLENE CHELI, an Individual<br><br>Plaintiff,<br><br>vs.<br><br>ARDAHAN PROPERTIES LLC, a New Jersey Limited Liability Company<br><br>Defendant. | Case No. 1:22-cv-4771<br><br>**COMPLAINT** |

## Introduction

Plaintiff, CHARLENE CHELI, an individual, ("Plaintiff") on her own behalf and on behalf of all other mobility impaired individuals similarly situated hereby sues the Defendant, ARDAHAN PROPERTIES LLC, a New Jersey Limited Liability Company, ("Defendant") for injunctive relief, damages, attorney's fees, litigation expenses, and costs pursuant to the Americans with Disabilities Act, 42 U.S.C. §12181 et seq. ("ADA") and the New Jersey Law Against Discrimination, N.J.S.A. 10:5-1 et seq. ("LAD").

## The Parties

1. Plaintiff, CHARLENE CHELI, is an individual over eighteen years of age and is otherwise sui juris. She resides in Vineland, New Jersey, within Cumberland County.

2. Defendant, ARDAHAN PROPERTIES LLC, a New Jersey Limited Liability Company, owns or operates a place of public accommodation alleged by the Plaintiff to be operating in violation of Title III of the ADA.

**Jurisdiction and Venue**

3. Defendant's place of public accommodation is a shopping center/plaza located at 1181-1183 E. Landis Avenue, Vineland, New Jersey 08360, Cumberland County[1] ("Subject Property").

4. Venue is properly located in the District of New Jersey, Camden Vicinage because venue lies in the judicial district of the property situs. The Subject Property is located in and does business within this judicial district.

5. Pursuant to 28 U.S.C. § 1331 and 28 U.S.C. §1343, this Court has been given original jurisdiction over actions which arise from the Defendant's violations of Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 et seq.[2]

6. Jurisdiction over the state law claim vests with this Court pursuant to 28 U.S.C § 1367.

7. The Defendant either owns, leases, leases to, or operates a place of public accommodation as defined by the ADA and the regulations implementing the ADA. The Defendant is thus required to comply with the obligations of the ADA[3].

8. Plaintiff, CHARLENE CHELI, is an individual with disabilities - as defined by and pursuant to the ADA. Ms. Cheli has been diagnosed with facioscapulohumeral muscular dystrophy and therefore has a physical impairment that substantially limits many of her major life activities[4] including, but not limited to, not being able to walk, stand, reach, or lift. Ms. Cheli requires the use of a wheelchair to ambulate.

---

[1] Also being known as Block 4211, Lot 9 on the Municipal Tax Map of Vineland City
[2] See also 28 U.S.C. § 2201 and 28 U.S.C. § 2202
[3] 28 CFR § 36.201(a) and 28 CFR § 36.104
[4] as defined by 28 CFR § 36.105(b)(1-2)

**Factual Context**

9.      Ms. Cheli is a staunch advocate of the ADA. Since becoming disabled (and having to fully rely on the use of her wheelchair to ambulate) she has dedicated her life to this cause so that she, and others like her, may have full and equal enjoyment of all public accommodations without fear of discrimination and repeated exposure to architectural barriers.

10.     Ms. Cheli has been deeply affected by the architectural barriers which are still found at many of the public places that she visits. Seemingly trivial architectural features such as parking spaces, sidewalks, handrails, and toilets are taken for granted by the non-disabled but, when improper, are cumbersome, arduous, and even dangerous for her.

11.     The barriers to access that Ms. Cheli experiences at differing places of public accommodation are extremely similar in nature; she is often faced with inadequate accessible parking spaces with improper access aisles, sloped curb ramps, cracked asphalt, inaccessible dining tables, and non-compliant restrooms. Thus, the actions filed on her behalf are often very similar, listing similar ADA violations and seeking similar remediations.

12.     Ms. Cheli is exceedingly frustrated and disheartened by the repetitiveness of the complaints she is forced to voice to employees and management, those complaints along with letters and emails do nothing to stem the ongoing discrimination; only filing of actions such as this will spur the change necessary to obtain equal rights.

13.     The Subject Property is located less than one mile from Ms. Cheli's home, she has visited the property many times over the years; her last visit taking place on or about April 22, 2022.

14.     Ms. Cheli has visited the Subject Property not only as a bone fide purchaser; availing herself of the goods and services offered to the public within, but also to investigate, as a tester, the status of the violations that she has encountered on previous visits.

15. Ms. Cheli fully intends to return to this location in the very near future. Ms. Cheli cannot provide a date certain for return; but due to the nature of the Subject Property, its proximity to her home, and her frequent nearby travel such is not required. Ms. Cheli intends to revisit the Subject Property as a bone fide purchaser and ADA tester, to monitor any progress made with to respect to compliance.

16. Ms. Cheli has personally encountered repeated exposure to architectural barriers at the Subject Property and those harmful conditions have endangered her safety and caused her great distress.

17. The ADA has been law for over thirty (30) years and the Subject Property remains non-compliant. Thus, the Plaintiff has reasonable grounds to believe that she will continue to be subjected to discrimination by the Defendant at its place of public accommodation.

18. Ms. Cheli has a realistic, credible, existing, and continuing threat of discrimination from the Defendant through its non-compliance with the ADA at the Subject Property as described but not necessarily limited to the barriers she has personally experienced which are listed in paragraph 23 of this complaint.

19. Following any resolution of this matter Ms. Cheli will ensure that the Subject Property undertakes the remedial work that is required under the appropriate standard and is compliant with the ADA. This reinspection will occur as set forth in any agreement contemplated by the parties or as ordered by this Court.

## COUNT I
### Violation of Title III of the
### Americans with Disabilities Act, 42 U.S.C. § 12181, et seq.

20. Plaintiff realleges and incorporates, by reference, all of the allegations contained in all of the preceding paragraphs.

21. The Defendant has discriminated against Ms. Cheli, and others similarly situated, by denying access to, and full and equal enjoyment of, the goods, services, facilities, privileges, advantages and/or accommodations of the Subject Property, as prohibited by the ADA.

22. A preliminary inspection of the Defendant's property, conducted by the Plaintiff's expert, has shown that violations of the ADA exist.

23. The following are architectural barriers and violations of the ADA that Ms. Cheli has personally encountered during her visits to the Subject Property:

**Parking and Exterior Accessible Route**

a. The accessible parking spaces throughout the Subject Property are not maintained, lack compliant access aisles, and fail to provide a compliant accessible route; violations of the ADAAG and Sections 402 and 502 of the 2010 ADA Standards. Due to the foregoing Ms. Cheli could not safely unload in the designated accessible parking area and has instead parked away from the facility to ensure free access to her van.

b. The exterior accessible route leading from the accessible parking spaces to the facilities at the Subject Property fails to provide a safe accessible route to the ramps or curb ramps; in violation of the ADAAG and Section 402 of the 2010 ADA Standards. Ms. Cheli must traverse through excessive sloping and abrupt changes of level to reach the sidewalk - these conditions present her with a tipping hazard and could cause damage to her wheelchair.

c. The Subject Property fails to provide the requisite number of compliant accessible parking

5

spaces and van accessible parking spaces, in violation of ADAAG and Section 502 of the 2010 ADA Standards. The lack of accessible parking has forced Ms. Cheli to park away from the building - in open areas - as detailed above. This situation has forced her to travel across the parking lot, through vehicular traffic, to reach the facility and has caused her frustration, anxiety, and distress.

d. The Subject Property does not contain the requisite curb ramps in all areas while the curb ramps that are present non-compliant and contain excessive sloping, abrupt changes of level, and lack the requisite level landings; violations of the ADAAG and Sections 402 and 406 of the 2010 ADA Standards. These barriers to access make curb ramps unsafe for wheelchairs and have presented Ms. Cheli with a tipping hazard; causing her distress.

e. The path of travel/sidewalk used to access to the tenant spaces at the Subject Property contains cross-slopes and abrupt changes of level above the allowable limit, in violation of the ADAAG and Section 402 of the 2010 ADA Standards. Excessive sloping presents Ms. Cheli with another tipping hazard and abrupt changes of level could damage to her wheelchair.

f. The Subject Property fails to provide a compliant route to the adjacent street/sidewalk, and/or public transportation route. Ms. Cheli is precluded from accessing the Subject Property from these areas due to the lack of an accessible route; a discriminatory omission which limits her options for transportation; a violation of ADAAG and Section 206.2.1 of the 2010 ADA Standards.

**Access to Goods and Services**

g. Payment counters throughout the Subject Property are mounted beyond Ms. Cheli's reach and equal facilitation is not provided to those in wheelchairs, a violation of ADAAG and

Sections 308 and 904 of the 2010 ADA Standards. Ms. Cheli cannot access these payment counters.

h. When attempting to enter the tenant spaces Ms. Cheli was impeded by abrupt changes of level and sloping beyond allowable limits at the base of the doors, a violation of ADAAG and Section 404 of the 2010 ADA Standards. Ms. Cheli could not enter without assistance; these barriers present her with a tipping hazard and could cause damage to her wheelchair.

**Restrooms**

i. The restrooms at the Subject Property (including that within True Length Beauty Salon) are not ADA compliant and are unsafe for use by Ms. Cheli. The barriers to access within these restrooms include inaccessible water closets which lack proper controls, incorrect signage, and a lack of wheelchair maneuvering clearance; violations of ADAAG and Section 601 of the 2010 ADA Standards. Ms. Cheli could not access the restroom without assistance.

j. Restrooms at the Subject Property provides toilet tissue, soap, and paper towel dispensers which are mounted improperly and/or are mounted beyond Ms. Cheli's reach; in violation of ADAAG and Section 308 of the 2010 ADA Standards. Ms. Cheli could not make use of the dispensers due to their improper location - if forced to attempt to reach beyond her capacity she could fall from her wheelchair and injure herself.

k. The lavatories located at the Subject Property lack the requisite knee clearance and toe clearance; a violation of ADAAG and Section 606 of the 2010 ADA Standards. Ms. Cheli could not freely access the lavatory due to a lack of clearance and maneuvering space; she could neither approach nor reach the sinks.

l. The restrooms at the Subject Property contain improper centerlines for the water closets in

    violation of ADAAG and Section 604 of the 2010 ADA Standards. The presence of improper centerlines on toilets affects the toilet's location relative to the grab bars and limiting maneuvering space, rending the toilet area unsafe for and unusable by Ms. Cheli.

m. The use of restroom doors at the Subject Property is impeded by improper signage, and a lack of maneuvering clearance; in violation of ADAAG and Section 404 of the 2010 ADA Standards. Ms. Cheli could not freely access the restrooms doors due to the presence of stored goods and inadequate maneuvering clearance.

24. Each of the foregoing is also a violation of the ADA Standards, originally published on July 26, 1991 and republished as Appendix D to 28 CFR part 36 ("1991 Standards"); the "2004 ADAAG", which refers to ADA Chapter 1, ADA Chapter 2, and Chapters 3 through 10 of the Americans with Disabilities Act and the Architectural Barriers Act Accessibility Guidelines, which were issued by the Access Board on July 23, 2004 and codified at 36 CFR § 1191, appendix B and D; and the 2010 Standards for Accessible Design ("2010 ADA Standards"), as promulgated by the U.S. Department of Justice.[5]

25. The discriminatory violations described in paragraph 23 may not be an exhaustive list of the ADA violations that exist at the Subject Property but are the result of a preliminary inspection conducted by the Plaintiff and include all those knowingly experienced by Ms. Cheli. Plaintiff requires thorough inspection of the Defendant's place of public accommodation in order to photograph and measure the architectural barriers that exist, in violation of the ADA.

26. Ms. Cheli, and all others similarly situated, will continue to suffer discrimination, injury

---

[5] 28 CFR § 36.104

and damage without the immediate relief provided by the ADA and requested herein.

27. Defendant has discriminated against Ms. Cheli, and all those similarly situated, by denying her access to full and equal enjoyment of the goods, services, facilities, privileges, advantages and/or accommodations of its place of public accommodation or commercial facility in violation of the ADA.

28. Defendant continues to discriminate against Ms. Cheli, and all those similarly situated, by failing to remove architectural barriers; and the communication barriers that are structural in nature.[6]

29. Defendant continues to discriminate against Ms. Cheli, and all those similarly situated, by failing to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford all offered goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities.[7]

30. Defendant continues to discriminate against Ms. Cheli, and all those similarly situated, by failing to take such efforts that may be necessary to ensure that no individual with a disability is excluded, denied services, segregated, or otherwise treated differently than other individuals because of the absence of auxiliary aids and services.[8]

31. If the Defendant's facility is one which was designed and constructed for first occupancy subsequent to January 26, 1993[9] then the Defendant's facility must be readily accessible to and useable by individuals with disabilities in accordance with the 1991 Standards.

---

[6] 42 U.S.C. § 12181(b)(2)(A)(iv)
[7] 42 U.S.C. § 12181(b)(2)(A)(ii)
[8] 42 U.S.C. § 12181(b)(2)(A)(iii)
[9] as defined by 28 CFR § 36.401(a)(2)

32. Pursuant to 28 CFR § 36.304(a)(1) "any alteration" made to the Subject Property after January 26, 1992, must have been made so as to ensure that, to the maximum extent feasible, the altered portions of the Subject Property area readily accessible to and usable by individuals with disabilities, including individuals, like Ms. Cheli, who use wheelchairs. An alteration is deemed to be undertaken after January 26, 1992, if the physical alteration of the property begins after that date.[10]

33. Pursuant to 28 CFR § 36.304(a) Defendant shall remove all existing architectural barriers, including communication barriers that are structural in nature, where such removal is readily achievable.

34. 28 CFR § 36.304(d)(2)(i) controls with respect to the corresponding technical and scoping specification to which each element at the Subject Property must comply with or be modified to meet. Those are defined as follows:

   a. Elements that have not been altered since on or after March 15, 2012 must comply with the 1991 Standards.

   b. Elements that have existed prior to and have not been altered since on or after March 15, 2012 that do not comply with the 1991 Standards must be modified (to the extent readily achievable) to comply with either the 1991 Standards or the 2010 Standards.

   c. Elements that have been altered on or after March 15, 2012 that do not comply with the 1991 Standards must be modified (to the extent readily achievable) to comply with the 2010 Standards.

35. Plaintiff is not required to notify Defendant of their violation of the ADA nor their ongoing

---

[10] 28 CFR § 36.402(a)(2)

discrimination prior to the filing of this action. To that end, Ms. Cheli has found that voicing her concerns to employees and management, making phone calls, and writing letters is futile. In her experience the only way to spur action and achieve the accessibility required under the law is to file matters, like this one, and pray for the relief contained herein.

36. Ms. Cheli is without adequate remedy at law and is suffering irreparable harm, including bodily injury consisting of emotional distress, mental anguish, suffering, and humiliation. Considering the balance of hardships between the Plaintiff and the Defendant, a remedy in equity is warranted. The public interest would not be disserved by the issuance of a permanent injunction.

37. Pursuant to 42 U.S.C. § 12205 and 28 CFR § 36.505, Plaintiff is entitled to recovery of attorney's fees, costs, and litigation expenses from the Defendant.

38. Pursuant to 42 U.S.C. § 12188(a)(2), this Court is provided with authority to grant Ms. Cheli injunctive relief, including an order to require the Defendant to alter the Subject Property and make such readily accessible and useable to the Plaintiff and all other persons with disabilities as defined by the ADA; or by closing the Subject Property until such time as the Defendant cures their violations of the ADA.[11]

**WHEREFORE,** Plaintiff respectfully demands:

a. The Court issue a Declaratory Judgment determining that the Defendant is in violation of Title III of the ADA.

b. An order directing the Defendant to make the Subject Property fully compliant with the 2010 ADA Standards, or in the alternative, injunctive relief against the Defendant including an order to make all readily achievable alterations to the Subject Property; or to

---

[11] 42 U.S.C. § 12188(b)(2)

    make such readily accessible to and usable by individuals with disabilities to the extent required by the ADA; and to require the Defendant to make reasonable modifications in policies, practices or procedures, when such modifications are necessary to afford all offered goods, services, facilities, privileges, advantages or accommodations to individuals with disabilities; and by failing to take such steps that may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services.

c.   An award of attorney's fees, costs and litigation expenses pursuant to 42 U.S.C. § 12205.

d.   Such other relief as the Court deems just and proper, and is allowable under Title III of the Americans with Disabilities Act.

## COUNT II

### Violation of New Jersey Law
### Against Discrimination, N.J.S.A. 10:5-1 et seq.

39.   Plaintiff realleges and incorporates, by reference, all of the allegations contained in all of the preceding paragraphs.

40.   The Subject Property is a place of public accommodation as defined by N.J.S.A 10:5-5, (LAD).

41.   New Jersey law provides that all persons shall have the opportunity to obtain all the accommodations, advantages, facilities, and privileges of any public place of accommodation without discrimination on the basis of disability.  This opportunity is recognized and declared to be a civil right.[12]

42.   As set forth above, the Defendant has violated the LAD by denying Ms. Cheli, and all other

---

[12] Pursuant to N.J.S.A 10:5-4

disabled individuals, the full and equal enjoyment of the goods, facilities, services, and accommodations available at the Subject Property.

43. As a result of the Defendant's discrimination, through repeated exposure to architectural barriers and other harmful conditions, Ms. Cheli has sustained bodily injury in the form of emotional distress, mental anguish, suffering and humiliation, in violation of the LAD.

**WHEREFORE**, Plaintiff respectfully demands judgment for damages, attorney's fees, litigation expenses, including expert fees and costs pursuant to the New Jersey Law Against Discrimination.

Respectfully submitted,

Date: July 27, 2022

*/s/ Jon G. Shadinger Jr.*
Jon G. Shadinger Jr., Esq.
Shadinger Law, LLC
NJ Attorney ID No. 036232017
717 E. Elmer St., Suite 7
Vineland, NJ 08360
Tel (609) 319-5399
Fax (314) 898-0458
js@shadingerlaw.com
*Attorney for Plaintiff*